The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn, II, and the briefs and arguments on appeal. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for certain minor modifications. Additionally, Defendant filed a Motion to Receive Additional Evidence and Plaintiff filed a response thereto. This Motion is DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, the Industrial Commission has jurisdiction of the parties and the subject matter, and the parties are subject to and bound by the provision of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Defendant-employer is an approved self-insured with Allied Claims acting as the administrator.
4. Plaintiff's average weekly wage was $247.50 per week at all relevant times as previously determined by the Industrial Commission.
5. Defendant admits plaintiff sustained an injury by accident while in the course and scope of her employment with defendant on or about 11 July 1995.
6. Among the issues to be determined are:
 (a) Whether plaintiff is entitled to future medical compensation under G.S. § 97-25.1.
 (b) Whether plaintiff's current medical condition is causally related to the 11 July 1995 injury.
 (c) Whether defendants should be sanctioned under G.S. § 97-88.1.
 ***********
The Full Commission makes findings of fact as follows:
 FINDINGS OF FACT
1. Plaintiff worked as a nursing assistant for the defendant in its nursing home, beginning April 1995. Plaintiff's job required that she have direct patient care responsibility.
2. On 11 July 1995, plaintiff sustained an admittedly compensable back injury when she attempted to prevent a 150 pound patient from falling. Plaintiff fell onto the floor while holding the patient to prevent the patient from hitting the floor. As she was falling, plaintiff attempted to keep her balance and not fall.
3. When plaintiff caught the patient, she felt severe low back, hip and left leg pain. Defendant sent plaintiff to Dr. P. A. Brezicki. Plaintiff informed Dr. Brezicki that she had a lumbar diskectomy several years earlier. Dr. Brezicki treated plaintiff conservatively for a low back strain and possible herniated disc. Plaintiff did well until 1 August 1995, when she experienced an acute exacerbation of her pain. Then Dr. Brezicki referred her to Dr. Marchese, who had previously treated plaintiff.
4. Two years prior to this injury, plaintiff had a herniation of the left L5-S1 disk, the herniation was corrected by surgery on 6 January 1993, by Dr. Mark Marchese. After the surgery, plaintiff did well and returned to full-time employment for approximately two years before her 11 July 1995 injury.
5. On or about 26 October 1995, Dr. Geissele took over plaintiff's care and after an examination and discussing the matter with plaintiff, he diagnosed her condition as L5-S1 disk disease, stenosis and low back/left leg pain. Dr. Geissele rated and released the employee 16 April 1996.
6. Plaintiff continued to take medication for pain and depression following her release by Dr. Geissele. She would contact Dr. Geissele when she needed additional medication. Plaintiff did not have a doctor monitoring her condition or medication. Plaintiff continues to have pain and difficulty as a result of her injury, she still has inflammation in her back, a burning feeling and numbness in her leg and pain that feels like fire running across her lower back into her hip and legs. Plaintiff's left leg has been numb since her injury and the area of numbness continues to increase. Her legs give out on her without warning, causing her to fall. She can stand for thirty forty minutes before having to sit, and on some days her pain is so intense that it hurts to breathe. Plaintiff uses a Tens unit on a regular basis to help control her pain.
7. As a result of the 11 July 1995 injury, plaintiff will most likely require lifetime medical care and monitoring. Medication she is taking can damage her liver and possibly other organs and this has to be monitored on a regular basis to determine whether damage has occurred and what should be done to correct or prevent any damage. Additionally, plaintiff may need additional and/or different care.
8. The difficulties plaintiff is now experiencing are a direct result of her 11 July 1995 injury. Although plaintiff was suffering from pre-existing conditions, the fall of 11 July 1995 aggravated that condition to the point that she required medical treatment. Plaintiff had been working in some very physical, demanding positions at the time and prior to her injury, and she had not experienced any problems with her back and was able to perform her job without difficulty.
9. Plaintiff continues to experience chronic severe pain in her back and legs. She continues to take medication and use the Tens unit prescribed by Dr. Geissele.
10. In June 1997, plaintiff slipped on a rug at home and landed on her teenage son. However, she experienced no additional symptoms. This incident did not contribute to her compensable back condition.
11. Plaintiff saw Dr. Geissele 2 July 1997 with increasing pain while trying to work for defendant in a clerical position. A repeat MRI was performed after 17 September 1997, after initial refusal by defendant. At this time, Dr. Geissele is not certain whether there is a recurrent disk herniation or if more aggressive treatment is needed.
12. Plaintiff's current condition is a direct result of the 11 July 1995 injury at work and will require medical treatment for the present and foreseeable future.
13. Defendant was aware that plaintiff was having continuing difficulty with her back and that she did not have any intervening acts that had contributed to her condition. Defendant was aware that plaintiff was continuing to take medication for her pain and depression associated with her 11 July 1995 injury, and that plaintiff had never stopped taking medication or complaining about her pain since her injury. Defendant was further aware that, as a direct result of her injury, she was in continuing need for medical care and monitoring of her condition. Defendant had not received any indication from her treating doctors that plaintiff's need for medical care had ceased, but to the contrary. As late as September 1997, Dr. Geissele had requested that an MRI be performed so that he could attempt to address plaintiff's continuing pain, and defendant without just cause initially refused to allow the same.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has a substantial risk of the necessity of future medical treatment and is entitled to an Order under G.S. § 97-25.1.
2. Defendant has unreasonably defended this action, and should be sanctioned under G.S. § 97-88.1 with plaintiff's attorney fees.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. As provided by G.S. § 97-25.1, defendant shall, for the employee's lifetime, pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen the employee's period of disability. This treatment shall include, but not be limited to, medications, medical monitoring, Tens unit, plus the current treatment recommendations of Dr. Geissele.
2. Defendants shall pay plaintiff's counsel the sum of $4,141.80 as a result of their unreasonable defense of this claim.
3. Defendants shall pay the costs due to the Commission.
4. Defendant's motion to receive additional evidence is DENIED.
This the 1st day of February 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING IN PART AND DISSENTING IN PART:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER